PRINCE et al. v. TAYLOR. (No. 352.) †

(Court of Civil Appeals of Texas. El Paso.
Nov. 12, 1914. On Rehearing, Dec. 24,
1914.)

1. MASTER AND SERVANT (§ 305*)—INJURY BY
AUTOMOBILE—AGENCY OF DRIVER.

If a chauffeur, acting within the scope of
his general employment, as driver, undertook to
operate a family car, through the owner's in-
experienced son, though instructed not to, it is
the act of the owner, and in a suit for resulting
injury it is unnecessary to further show the
son's agency than to show that the chauffeur
permitted and assisted him to drive at the time
and place of the accident.

[Ed. Note.—For other cases, see Master and
Servant, Cent. Dig. §§ 1223, 1224; Dec. Dig. §
305.*]

2. APPEAL AND ERROR (§ 1033*)—HARMLESS
ERROR—INSTRUCTIONS.

In a suit for injury to a pedestrian by an
automobile, defended on the ground of contribu-
tory negligence, defendants could not complain
of an instruction in their favor if plaintiff
stepped back to avoid a street car, and so put
himself in the path of the automobile so that
those in charge could not, by exercise of ordi-
nary care, stop it and guide it away before he
was struck, as on these facts defendants would
not have been entitled to a verdict without a
further finding that his stepping back was the
proximate cause of the injury.

[Ed. Note.—For other cases, see Appeal and
Error, Cent. Dig. §§ 4052–4062; Dec. Dig. §
1033.*]

3. MUNICIPAL CORPORATIONS (§ 706*)—USE
OF STREETS—INJURY BY AUTOMOBILE—IN-
STRUCTIONS.

In a suit for injury to a pedestrian by an
automobile, the court was requested to tell the
jury to find for defendants if, as the automobile
rounded the curve at a street intersection, a
street car started to make the turn and the rear
end swung outward toward a woman causing
her to step back into the path of the automo-
bile, and the driver to avoid striking her turn-
ed the car and struck plaintiff, and if the street
car causing her movement was the sole proxi-
mate cause of plaintiff's injury to find for de-
fendants, regardless of defendants' negligence in
driving the automobile, so as to necessitate a
sharp turn from the woman. *Held*, that it
was not error to refuse the request because it
withdrew the issue as to whether defendants
were negligent in driving at all at that place un-
der the circumstances.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. § 1518; Dec. Dig. §
706.*]

4. TRIAL (§ 260*)—REQUEST FOR CHARGE—IS-
SUE PRESENTED BY GENERAL CHARGE.

No error can be predicated on the refusal
of a request as to an issue sufficiently presented
by the general charge.

[Ed. Note.—For other cases, see Trial, Cent.
Dig. §§ 651–659; Dec. Dig. § 260.*]

5. MUNICIPAL CORPORATIONS (§ 705*)—USE OF
STREETS—INJURY BY AUTOMOBILE—MISTAKE
OF JUDGMENT AS DEFENSE.

A mistake of judgment as to the competen-
cy of the driver of an automobile, however hon-
estly made, is not a defense to a suit for injury
caused by his negligence.

[Ed. Note.—For other cases, see Municipal
Corporations, Cent. Dig. §§ 1515–1517; Dec.
Dig. § 705.*]

6. DAMAGES (§ 208*) — PERSONAL INJURY —
QUESTION FOR JURY.

Evidence of personal injury, from which it
may be inferred from an opinion of a physician

that plaintiff could not do active work, justified
submission of future diminished capacity to
earn money as an element of damage.

[Ed. Note.—For other cases, see Damages,
Cent. Dig. §§ 54, 64, 68, 132, 144, 145, 205, 220,
533, 534; Dec. Dig. § 208.*]

Appeal from District Court, Harris Coun-
ty; N. G. Kittrell, Judge.

Suit by Joe H. Taylor against H. Prince
and another. From a judgment for plaintiff,
defendants appeal. Affirmed, and motion for
rehearing overruled.

Andrews, Streetman, Burns & Logue, Fish-
er, Campbell & Amerman, W. L. Cook, and
Jno. A. Mobley, all of Houston, for appellants.
Gill, Jones & Tyler, of Houston, for appellee.

WALTHALL, J. In this case the plain-
tiff in the trial court, Joe H. Taylor, now ap-
pellee, sued the defendants, H. Prince and
his son, Harry Prince, appellants, for dam-
ages for personal injuries which he alleges
he sustained by reason of the negligence of
the defendants proximately causing his in-
juries. Briefly stated, the plaintiff alleges
in his petition that he was struck by an au-
tomobile owned by defendant H. Prince, which
at the time of the accident was being driven
on Texas avenue in the city of Houston, or
just at the corner of Main street and Texas
avenue in said city. The petition alleges that
his being struck by the automobile and the
consequent injuries to him, of which he com-
plains, were caused by negligence for which
H. Prince would be liable, upon the following
grounds: That at the time of the accident
the car causing the injury was being driven
by Harry Prince, son of H. Prince, either up-
on his own responsibility or under the direc-
tion of one Schell, whom H. Prince had em-
ployed as chauffeur and placed in charge of
the automobile, with authority to drive same
upon the streets of Houston, for the use and
benefit of H. Prince's family, of which it was
alleged Harry Prince was a member, and
that Harry Prince was likewise placed in
charge of the machine by H. Prince, with
authority to operate it. The petition alleged
that Harry was an inexperienced and incom-
petent driver of the machine, and that Schell,
in charge of the machine, negligently turned
the car over to Harry and permitted him to
operate same with resultant injury to plain-
tiff. The petition alleges that the injuries
to plaintiff were proximately caused by neg-
ligence in one or more of several respects:
(1) By Harry, as H. Prince's agent, negligent-
ly operating the car, either in violation of
the city ordinance, or by failure to exercise
ordinary care; (2) by Schell, the chauffeur,
and H. Prince's agent, participating in such
negligent operation of the car; (3) by negli-
gence of the chauffeur in turning the car
over to Harry Prince, an incompetent and
inexperienced operator. The damages claim-
ed are predicated upon suffering, mental and

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

† Writ of error pending in Supreme Court.

physical, lost time, and diminished capacity to labor and earn money.

Defendant H. Prince answered by general demurrer, general denial, and special pleas, in substance: (a) That, if plaintiff was struck by an automobile owned by H. Prince, same was intrusted exclusively into the hands of a competent chauffeur, and, unless at the time of the accident same was being operated by said chauffeur, it was not being operated under the authority or for the use and benefit of H. Prince; (b) that plaintiff was himself guilty of negligence contributing to cause his injuries; (c) that the injuries to plaintiff were proximately caused by an intervening agency, in that, it being Saturday afternoon, with the streets crowded, a street car of the Houston Electric Company had been stopped at the corner, or near thereto, just before making the turn from Texas avenue into Main street, which street car prevented the passage of pedestrians who were going in the direction in which plaintiff was going; and that said street car suddenly started around the curve at that point, causing persons who were then and there near said street car to suddenly step backward or otherwise in the path of the moving automobile, in order to avoid the rear end of said street car, which swung outward toward such persons as the street car took the curve; and that the driver of the automobile, under such circumstances, undertook to turn said automobile so as to avoid striking and injuring such persons so moving out of the path of said street car; and that in doing so said automobile was caused to come in contact with plaintiff, if plaintiff was struck by said automobile. It was alleged that the starting of the street car, with the consequent moving of pedestrians to avoid its outward swing, was the sole proximate cause of injuries to plaintiff; there being no negligence of any persons for whom the defendant H. Prince would be liable on the occasion.

After a careful examination of all of the evidence offered on the trial, we find that the following facts appear without dispute: First. That appellee was injured, and that his injuries were due to the collision of an automobile with his person on the date alleged. Second. That the accident occurred at the intersection of Main street and Texas avenue in the city of Houston, about 7 o'clock in the evening on a Saturday, a time when that place was and is always the most crowded place in the city, both in the matter of moving people and moving vehicles. Third. That the automobile which injured plaintiff was owned by H. Prince, was then being driven by his son, Harry Prince, under the supervision and direction of the chauffeur of H. Prince. Fourth. That the automobile had been purchased by H. Prince for the use of his family, and he, his wife, and his son Harry constituted his family. That his wife and son and two guests were taking a pleasure ride on the occasion in question. Fifth.

That the car and chauffeur were subject to the wife's orders. Sixth. That, for about two weeks, Harry had been learning to drive the car under the immediate tutelage of the chauffeur, and that on the occasion of the accident the chauffeur was sitting beside Harry, advising and directing him, and sounding the horn for him on occasion. Seventh. That defendant H. Prince knew that Harry was learning to drive the car, and that he had been running the car, was present a number of times when the fact of Harry's running the car was mentioned, had ridden in the car on at least one occasion when Harry was driving, and made neither protest nor comment. Mrs. H. Prince had ridden a number of times when Harry drove, advising and directing him. Eighth. The legal limit of speed on Main street at and near the point of the accident was eight miles per hour, which had to be reduced to four miles per hour in turning corners. Ninth. It is undisputed that in turning the corner the automobile was exceeding the speed limit for turning corners, the speed being placed by Harry and the chauffeur at from five to six miles an hour, and the other witnesses varying up to twenty miles per hour. Tenth. It was undisputed that it was the moving automobile that injured plaintiff. Eleventh. The automobile was a five-passenger Packard, with a wheel base of 129 inches, which, with its overhang, would give the machine a total length of more than 12 feet. Twelfth. At the time of the accident, plaintiff had walked up Main street on the eastern sidewalk, and had just started across Texas avenue, toward the Binz Building, in the same direction and on the same side of Main street, when he was struck by the automobile, just as it turned the corner. Thirteenth. He was rolled or dragged several feet by the machine. The machine ran from 50 to 75 feet beyond the point of collision before the driver was able to stop it. Fourteenth. A lady, named Mrs. Walker, was badly injured by the same machine at the same time and place.

[1] Appellant's first assignment of error complains of the tenth paragraph of the court's general charge, in that said paragraph instructs the jury that H. Prince would be liable for the negligent acts of Harry Prince, if any, in the operation of the automobile, without properly submitting to the jury anywhere in the charge the question of whether or not there were such relations between H. Prince and Harry Prince as would amount to an agency, permitting the application of the doctrine of respondeat superior. The paragraph of the charge complained of reads as follows:

"Guided by these instructions, if you believe from a preponderance of the evidence that the automobile was being run at such rate of speed and under such circumstances as, you have heretofore been instructed, constituted negligence, and you further believe that plaintiff was struck by an automobile belonging to defendant

H. Prince, and that plaintiff was injured by being so struck, and believe that the negligence of those in charge of the car, or of either the chauffeur or Harry Prince, if negligence you find, was the proximate cause of plaintiff's being injured, the plaintiff is entitled to recover; and, unless you find for defendants upon instructions given in other parts of this charge, you will return your verdict in his favor against either H. Prince or against Harry Prince, or against both, according as you find liability under instructions hereinafter given."

The three propositions under this assignment are to the effect that, before H. Prince could be held liable for any negligence of Harry Prince, the evidence must either show as a matter of law, or raise the issue as a fact, that Harry was H. Prince's agent, acting within the scope of his agency, in the operation of the car, and that the fact of Harry's agency was an issuable fact and not undisputed to be stated by the court as a matter of law, and that it was prejudicial error, as the charge nowhere else presented to the jury appropriate instructions correctly informing them as to the circumstances under which H. Prince might be held liable for negligent acts of Harry Prince. If it were a necessary fact, to be shown before H. Prince could be made liable for the negligent act of Harry Prince in driving the car at the time and place of the accident, that H. Prince should have given Harry permission to drive the car, or should have given Schell, the chauffeur, permission to let Harry drive the car, the assignment would present a serious question, as both appellant's answer and his evidence on the trial dispute the question as to his permission to any person other than the chauffeur to drive the car. However, he admits his ownership of the car; admits that Schell was his chauffeur, and at the time and place of the accident was in charge of the car; admits that the car was a family car, and that the family used it altogether, and that at the time of the accident the car was in charge of the chauffeur, and that his wife and Harry, with friends, were in the car and taking a drive; admits that the chauffeur was invariably under the instructions of his wife. Appellant defends the action against his liability for Harry's negligence on the ground that he had given his chauffeur a general charge that no one else should drive the car.

In the case of Burnett v. Oechsner, 92 Tex. 590, 50 S. W. 563, 71 Am. St. Rep. 880, the court, quoting from Railway v. Anderson, 82 Tex. 516, 17 S. W. 1039, 27 Am. St. Rep. 902, states the law to be that:

"To hold the master liable for the act of his servant, it is not necessary that the servant should have the authority to do the particular act. The act of the servant may be contrary to his express orders, and yet the master may be liable. But the act must be done within the scope of the general authority of the servant. It must be done in furtherance of the master's business, and for the accomplishment of the object for which the servant is employed. For the mode in which the servant performs the duty he is engaged to perform, if wrongful and

to the injury of another, the master is liable, although he may have * * * forbidden the particular act."

To operate the family car of H. Prince on a pleasure drive for the family was admitted to be within the scope of the general authority of the chauffeur, Schell. If he (Schell), acting within the scope of his general employment, as driver of the car, undertook to operate the car through Harry Prince, although instructed by H. Prince not to do so, it would still be the act of H. Prince, and it would not be necessary to further show the agency of Harry Prince than to show the agency of Schell, that he permitted and assisted Harry Prince, as the undisputed evidence shows, to drive the car at the time and place of the accident. The above principle is further illustrated in the case of Reid Auto Company v. Gorsczya, 144 S. W. 688. Could the owner of a car relieve himself of liability by instructing his driver not to drive the car at an excessive rate of speed and to exercise ordinary care or to drive on certain streets and not to drive on others, if a failure to obey instructions caused injury to others? We think not. No more could he by instructing his driver not to permit an inexperienced person to drive the car.

If we eliminate from the case the idea that the general instruction of the owner of the car to his chauffeur to the effect that no other person should operate the car, we then have presented the question of the owner's liability for injury inflicted to another through the negligence of one put in charge of the car by the servant to perform the duties of the servant. It seems to us that the act of the servant in doing so would go to the mode in which the servant performs his duty to the master.

From the principles announced in the cases above quoted, we think it quite clear that to render H. Prince liable for an injury inflicted on the appellee through the negligence of Harry Prince, in driving the car, with the knowledge, consent, and under the direction of Schell, and while performing Schell's duties, it would not be necessary that the evidence show agency of Harry Prince, separate and apart and independent of the agency of Schell. We overrule appellant's first assignment of error.

The authorities above quoted, as we construe them, render it unnecessary for us to further discuss appellant's second, third, and fourth assignments of error.

[2] Appellant's fifth assignment of error complains of the fourteenth paragraph of the court's general charge, but copies the twenty-fourth paragraph. It is true, as stated in the assignment, that the paragraph complained of (the twenty-fourth) tells the jury to find for both defendants, if they should find that plaintiff stepped back to get out of the way of the swing of the car and that, in doing so, he put himself in the path of the approaching automobile, and at a time and place when

and where those in charge of the car could not by exercise of ordinary care, in the employment of the means at hand, stop the car or guide it away from the plaintiff, before he was struck, without submitting to the jury the question for them to determine whether the stepping back by plaintiff was the proximate cause of plaintiff's injury. The charge was one of which the plaintiff might have complained, but not the defendants. The defendants would not have been entitled to a verdict if the jury had found for them every fact submitted to them in the paragraph, but the plaintiff would, in addition, be entitled to have the jury say, before they could find for the defendants, that the stepping back was the proximate cause of his injury. The assignment is overruled.

[3] The sixth assignment complains of the refusal of the court to give requested charge No. 12. There was no error in refusing to give the charge. The charge requested the court to tell the jury to find for the defendant if they should believe from the evidence that, as the automobile was rounding the curve at the intersection of the streets, a street car then and there started in motion to make the turn from Texas avenue into Main street, and that the rear end of the street car swung outward toward Mrs. Walker, causing her to step back into the path of the moving automobile, and that the driver, in an effort to avoid striking Mrs. Walker, turned the car from her and struck the plaintiff, and, if the jury should find that the start of the street car causing the movement of Mrs. Walker was the sole proximate cause of plaintiff's injuries, the jury would return a verdict for defendants, and that regardless of any question of negligence on the part of defendants in driving the automobile at that time and place, so as to necessitate the sharp turn of the car from Mrs. Walker. The jury might have thought that it would not be in the exercise of ordinary care for defendants to undertake to drive the car at all at that place under the circumstances then existing. They would be the sole judges, and the charge, if given, would have withdrawn the issue from them.

[4] The seventh assignment complains of the refusal of the court to give requested charge No. 6, to the effect that, unless they found that the speed of the car at the time and place of the accident was the proximate cause of plaintiff's injury, it would be immaterial that the car was then exceeding the speed limit. The requested charge announces a correct principle of law; but we believe that paragraphs 10 and 11 of the general charge taken together sufficiently presents the issue to the jury, and the assignment is overruled.

[5] Defendant in his eighth assignment complains of the court's refusal to give requested charge No. 7 to the effect that, if the accident causing the injury arose out of Harry Prince's improper and unsafe operation of the automobile, resulting from his inexperience as a driver, and not from his want of ordinary care in an effort to properly operate the car, and that Schell believed him to be competent, and that a person of ordinary prudence would have considered him competent under the same circumstances and permitted him to drive the car, plaintiff could not recover of appellant. The assignment is based on the theory that Harry was an employé of appellant, and that appellant exercised ordinary care in selecting Harry as a driver of the car, and that the injury to appellee was occasioned wholly through Harry's incompetence as a driver of the car at the time and place of the accident.

The plaintiff's answer does not tender such an issue as a defense, neither does the evidence. The plaintiff did assign as a ground of negligence Harry's incompetence as a driver, and the court submitted that issue to the jury in the seventeenth and eighteenth paragraphs. If the law was as appellant suggests in the assignment, it would make appellee's rights to recover depend entirely on what Schell thought of the competency of Harry as a driver of the car. Suppose the appellant had thought himself competent to operate the car, but in fact was not, and that his incompetence caused the injury, could it be said that his mistake of judgment as to his competence, however honestly made, would alone be a complete defense to an action for damages caused? We think not.

[6] We think the evidence of the plaintiff as to his present physical condition as a result of the injury, and Dr. Howard's opinion, to the effect that if appellee's knee at the time of the trial was still sensitive upon use, and that if appellee has to rest it upon a pillow at night, he could not do active work, the court was not in error in submitting the matter of future diminished capacity to earn money as an element of damage as a probable result.

Finding no reversible error, the judgment is affirmed. Affirmed.

### On Rehearing.

Appellant H. Prince, in his motion for a rehearing, earnestly insists that this court was in error in overruling each of their nine assignments of error, and in their motion to reassert the same propositions contended for in their very able and exhaustive brief filed in this case. We have again reviewed the questions presented, but reach the same conclusions as in our former opinion, and, but for the fact that some of the statements made in the opinion are not as clearly stated as they might have been, we will further state some of the conclusions reached:

Appellants' contention, as stated in their motion for rehearing, is that the fact of ownership of an automobile will not be a ground of liability, nor will the fact that such automobile was being used by the immediate

family of a defendant be a ground of liability. That such use by the members of the immediate family might be a circumstance to be taken into consideration by a jury in determining the question of agency, but would constitute no independent ground of liability. If appellant's statement contained all or even the salient facts shown in the record, we would concede the correctness of his proposition. The record shows, as stated in the original opinion, some facts additional, which appellants seem to have either overlooked or deemed unimportant. The courts in many cases have held, as stated by appellant, in his motion, that if a member of the family, although operating the family vehicle, was operating it in his own behalf, and not in any of the uses for which the car was furnished by the father, and used without his consent, the father would not be liable for damage caused while being so used, on the ground solely that the car was a family car and that the driver was a member of the family. There would be two essential elements absent—agency and the business of the father. In our original opinion, the undisputed evidence stated in the opinion discloses the facts that appellant had furnished the car as a family car; that appellant, his wife, and Harry constituted the family; that appellant knew that Harry was learning to run the car on pleasure drives for the family, and made no protest; and that at the time of the accident the car was being used for the purpose for which the car was furnished by appellant. The chauffeur was employed by appellant, and, if the chauffeur had himself been driving the car, and in the use of the family at the time of the accident, there could be no question of the correctness of the charge, as to the chauffeur. The only question presented arises on the agency of Harry: Do the undisputed facts disclose that Harry was the agent of appellant, so that the fact of his agency could be assumed as a fact proved?

We need not here more fully restate the evidence or the facts which the undisputed evidence disclose. It would not only be unnecessary, but improper, for the trial court in the charge to have stated to the jury the undisputed evidence, or the facts established by the undisputed evidence. If, under the undisputed evidence, Harry was his father's agent or servant in operating the car at the time of the accident, whether his agency arose independently of the chauffeur or was imputed to him through the chauffeur or the fact of his mother's presence in the car and her necessarily implied consent to his driving the car, it would be immaterial. The paragraph of the court's charge complained of could have assumed the fact of his agency, and need not have stated that the evidence established his agency, any more than it would have been necessary to tell the jury that the chauffeur was the agent or servant

of appellant. It is true that agency is a question of fact to be found by the jury like any other fact; but if the elements which enter into and constitute agency are admitted, or the undisputed evidence disclose it, the fact of agency may be assumed or stated as a fact just as any other fact. Do the facts necessarily show Harry's agency? In the case of Allen v. Bland, 168 S. W. 38, in which a writ of error was refused, the Court of Civil Appeals for the Seventh District quoted with approval the case of Birch v. Abercrombie, 74 Wash. 486, 133 Pac. 1020, 50 L. R. A. (N. S.) 59, as follows:

"It (the automobile) was being used in furtherance of the very purpose of his ownership and by one of the persons by whom he intended that purpose should be carried out. It was in every just sense being used in his business by his agent. There is no possible distinction either in sound reason, sound morals, or sound law, between her legal relation to the parent and that of a chauffeur employed by him for the same purpose. The fact that the agency was not a business agency, nor the service a remunerative service, has no bearing upon the question of liability. In running his vehicle, she was carrying out the general purpose for which he owned it and kept it. No other element is essential to invoke the rule respondeat superior."

Again, in the same case:

"It (the charge then being commented on) declared the use of the machine for the purpose for which it was owned, by the person authorized by the owner to so use it, a use in the owner's business. It seems too plain for cavil that a father, who furnished a vehicle for the customary conveyance of the members of his family, makes their conveyance by the vehicle his affair—that is, his business—and any one driving the vehicle for that purpose with his consent, * * * express or implied, whether a member of his family or another, is his agent. The fact that only one member of the family was in the vehicle at the time is in no sound sense a differentiating circumstance abrogating the agency. It was within the general purpose of the ownership that any member of the family should use it and the agency is present in the use of it by one as well as by all."

In Stowe v. Morris, 147 Ky. 386, 144 S. W. 52, 39 L. R. A. (N. S.) 224—a case somewhat analogous in facts to the case before us—the Supreme Court of Kentucky, speaking through Justice Winn, uses this language:

"The car, at the time of the accident, was driven by Robert Stowe, the 18 year old son of the appellant. With him in the car were his sister (and others named) friends of his sister. * * * The car was kept by the father for the comfort and pleasure of his family, including his son and daughter. They had the right to use it as often as they liked."

The court held that the son, in using the car for the pleasure of himself and sister, with whom were friends, was a servant or agent of the father, not performing an independent service of his own, but the business of the father, making his father liable for his negligence in driving the car. The liability was not put on the ground of non-age of the son, but on the ground that the use of the car was in the furtherance of the father's business and for which the car was used.

We construct Daily v. Maxwell, 152 Mo. App. 415, 133 S. W. 351, to state the same principal, that is, that, regardless of the age of the son running the family vehicle for the pleasure of the family, with the consent of the father and within the scope of the family uses, would constitute the one operating the car the agent and servant of the father. In our original opinion, we stated that the fact of the agency of Harry would be imputed to him through the chauffeur; that is, that the chauffeur was simply operating the car through Harry, and that with the knowledge and consent of appellant, the trial court, in the paragraph complained of, may have assumed the agency of Harry on the ground stated in the cases above referred to. In the Allen v. Bland Case, above referred to, the court, after quoting from the Birch v. Abercrombie Case and each of the others to which we have referred, uses this language:

"We think the authorities quoted above announce the correct rule of liability, and they are cited and adopted as announcing the law applicable to the facts of this case."

We think there can be no question of the agency of Harry Prince under the undisputed facts, and adhere to our former ruling. If we are not in error in the view above expressed, we think the trial court correctly stated the law in the other paragraphs of the charge to which appellants' motion applies.

We overrule the motion.